# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHERYL J. ALLEN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| v. | : | **CIVIL ACTION** |
| | : | |
| **JOSEPH SWEENEY, et al.** | : | **NO. 11-5602** |
| | : | |
| **Defendants.** | : | |
| | : | |
| | : | |
| | : | |

## MEMORANDUM OPINION

**Tucker, J.**                                                    **November __, 2012**

Presently before the Court are six motions to dismiss Plaintiff's First Amended

Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) from the

following: (1) Defendants Lynn Allen ("Allen"), Rufus Deloach ("Deloach"), Sophiny Pek-Lilly

("Pek-Lilly"), Winona Alyakoub ("Alyakoub"), and Shanti Seelal ("Seelal") (collectively,

"DPW Defendants") (hereinafter, DPW Defs.' Mot. to Dismiss) (Doc. 20); (2) Defendant

Commonwealth of Pennsylvania ("Commonwealth") (Doc. 21); (3) Defendants Kenya Mann

Faulkner[1] ("Faulkner") and Darius Graziani ("Graziani") (Doc. 32); (4) Defendant

Commonwealth of Pennsylvania Office of Inspector General ("OIG") (Doc. 33); (5) Defendant

Curt Byerly ("Byerly") (Doc. 34); and (6) Defendant Bureau of Commonwealth Payroll

Operations ("BCPO") (Doc. 35). Also for consideration is Plaintiff Sheryl Allen's ("Plaintiff")

---

[1] Defendant Faulkner has indicated that Defendant's name is erroneously listed as "Kenya Mann-Faukner" in
Plaintiff's pleadings and therefore the Court's docket. (Doc. 32 at 1 n.1).

"Memorandum of Law in Response to [the DPW] Defendants' Motion to Dismiss" (Doc. 22).

Upon consideration of the parties' motions with briefs and exhibits, and for the reasons set forth

below, Defendants' motions to dismiss will be ***granted***.

## I.  PROCEDURAL HISTORY

Plaintiff Sheryl Allen brings this action pursuant to Title VI of the Civil Rights Act of

1964; 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988[2]; the First, Fifth, and Fourteenth

Amendments; and other federal and state law provisions.  Plaintiff filed her initial Complaint on

September 7, 2011. (Doc. 1.) Defendants Allen, Alyakoub, Deloach, Pek-Lilly, and Seelal filed

their initial Motion to Dismiss on October 28, 2011 (Doc. 10.) After a delayed service,

Defendant Commonwealth filed its initial Motion to Dismiss on January 13, 2012. (Doc. 15.)

Subsequently, Plaintiff filed her First Amended Complaint on February 8, 2012, adding

Defendants OIG and BCPO ("Amended Complaint"). (Doc. 19.) On February 28, 2012,

Defendants Allen, Alyakoub, Deloach, Pek-Lilly, and Seelal filed their renewed Motion to

Dismiss Plaintiff's Amended Complaint. (Doc. 20.) Plaintiff responded in opposition to this

motion on March 21, 2012. (Doc. 22.) Defendant Commonwealth also filed its renewed Motion

to Dismiss on February 28, 2012. (Doc. 21.) Service on Defendants Faulkner, Graziani, Byerly,

OIG, and BCPO was completed on June 5, 2012 (Docs. 23, 24, 25, 28, 29), and they filed their

respective motions to dismiss Plaintiff's Amended Complaint on June 22, 2012. (Docs. 32-35.)[3]

---

2 42 U.S.C. § 1988 merely provides for attorney's fees "[i]n any action or proceeding to enforce a provision of
sections 1981…1983, 1985, and 1986 of this title…." 42 U.S.C. § 1988.

3 Under the local rules, "[i]n the absence of [a] timely response [to a motion], the motion may be granted as
uncontested . . . . ." E.D. Pa. R. 7.1(c). Plaintiff has failed to timely respond to the motions to dismiss of the
following Defendants: Commonwealth, Faulkner/Graziani, OIG, Byerly, and BCPO. Therefore, the Court
treats these Defendants' motions as unopposed.  However, because this case has three related cases, see 12-
3709, 12-4816, and 12-5261, the Court has opted to discuss the claims asserted against these defendants in this

## II.  FACTUAL BACKGROUND

This civil rights action arises out of allegations that Defendants violated Plaintiff's state and federal rights in their actions in response to the investigation of Plaintiff's participation in a scheme that defrauded the Commonwealth of Pennsylvania Department of Public Welfare ("DPW").  This investigation led to a grand jury indictment of Plaintiff and ultimately a bench trial where she was acquitted of the charges. Plaintiff is an African-American woman who was employed at all relevant times by DPW (Am. Compl. ¶¶ 8, 29-31). Until June 9, 2009, DPW assigned Plaintiff to the Low-Income Home Energy Assistance Program ("LIHEAP")[4] operations in Philadelphia. (Am. Compl. ¶¶ 31-32.)

While Plaintiff was assigned to LIHEAP, the OIG investigated possible fraud by DPW employees administering that program. (Am. Compl. ¶ 32.) At some point, the OIG investigators Sweeney, Turner, and Graziani provided testimony and other evidence to a grand jury, and as a result Plaintiff was arrested and charged by the Philadelphia Police with fraud and related state crimes on June 9, 2009. (Am. Compl. ¶¶ 39-40.)

On June 10, 2009, Defendant Pek-Lilly of DPW's Human Resources Department informed Plaintiff that she was being suspended from her position without pay or benefits. (Am. Compl. ¶ 48, 55, 57.) The following day, June 11, 2009, Defendant Allen, DPW's Human Resources Director, sent Plaintiff a letter stating that Plaintiff was being suspended without pay

_____

opinion.

4 The Low-Income Home Energy Assistance Program ("LIHEAP") is a federally funded initiative. Each year, the United States Congress appropriates money (almost $2 billion in 2009) to enable states to help low-income households with heating costs. States submit plans to the federal government, detailing recipient eligibility requirements, benefit levels, and rules for administering the program, all of which are left to the states to determine. Once a state's plan is approved, funds are provided to the state to administer the program. In THE Commonwealth of Pennsylvania, the Department of Public Welfare ("DPW') administers the state's LlHEAP program. (DPW Defs.' Mot. to Dismiss, Ex. 1: Grand Jury Presentment at 3.)

or benefits (both medical and union) because of the arrest and pending charges. (Am. Compl. ¶¶ 49-50.) This letter also informed Plaintiff that "an investigation will be conducted during the course of this suspension and appropriate action will be taken at its conclusion." (Am. Compl. ¶ 50.) During her suspension, Plaintiff sought unemployment compensation benefits, and on July 30, 2009, a hearing was held before the Unemployment Compensation Board of Review, during which Defendant Allen provided testimony in opposition to Plaintiff's unemployment compensation application. (Am. Compl. ¶¶ 59-60.) However, Plaintiff ultimately obtained unemployment compensation during her suspension. (Am. Compl. ¶ 61.)

During her suspension, Defendant Allen requested that Plaintiff come into her office to discuss an open Income Maintenance Caseworker position, a promotion Plaintiff had applied for before her suspension (Am. Compl. ¶¶ 62-63.) On March 17, 2009, Plaintiff went to the office to discuss the position, and while there, Human Resources Department employee Defendant Patricia Shrocki spoke to someone about Plaintiff's criminal case within earshot of Plaintiff and others even though Plaintiff requested discretion. (Am. Compl. ¶¶ 63, 66.) During the meeting, Human Resources Department employee Defendant Deloach "demanded" that Plaintiff declare herself "unavailable" for the Income Maintenance Caseworker position. (Am. Compl. ¶ 67.) When Plaintiff refused, Defendant Deloach ultimately made the decision to hire "a lesser qualified co-worker" for the position, even though Plaintiff should have been hired "under the state Civil Service rules." (Am. Compl. ¶¶ 67-68.)

Plaintiff eventually proceeded to a bench trial on the criminal charges and, on September 20, 2010, was found not guilty by Philadelphia County Common Pleas Court Judge Lisa M. Rau. (Am. Compl. ¶ 72.) Following the verdict, Plaintiff's suspension was lifted, and she returned to work at DPW. (Am. Compl. ¶ 74.) However, upon her return, Plaintiff was reassigned to a job in

the "misfit district," a job site within DPW where employees are transferred for disciplinary reasons. Plaintiff was given no reason for the transfer. (Am. Compl. ¶¶ 75-76.) Once there, Plaintiff discovered that coworkers there referred to her as the "girl from LIHEAP," which implied a negative connotation. (Am. Compl. ¶¶ 78-79.)

Upon her return, Plaintiff attempted to recover her salary for the period of time she was suspended without pay. (Am. Compl. ¶ 82.) However, Plaintiff's request was rejected by way of a letter from BCPO employee Curt Byerly, which explained that backpay could not be granted because Plaintiff received unemployment benefits during her suspension. (Am. Compl. ¶ 82.) Defendant Byerly's letter also informed Plaintiff that she owed payments for union dues and medical benefits for the suspension period and that money would be deducted from her pay. (Am. Compl. ¶ 85.) Plaintiff thereafter complained to Defendant Allen, who declined to further inquire into the matter. (Am. Compl. ¶ 91).

Plaintiff found the working conditions in her new assignment stressful and took periods of leave to deal with that stress. (Am. Compl. ¶ 92.) Plaintiff eventually took a voluntary demotion in a further effort to alleviate the stress. (Am. Compl. ¶ 93.) Plaintiff has been under the treatment of a licensed psychologist for many months to cope with the emotional distress, stress, anxiety, hypersensitivity, nightmares, post-traumatic stress disorder, loss of sleep, eating disorders, humiliation, fear, and uncertainty. (Am. Compl. ¶¶ 103-04.)

The Amended Complaint contains eighteen counts[5] alleging Plaintiff's constitutional and civil rights were violated by:

---

[5] Counts XIX through XXI enumerate the relief sought by Plaintiff, and are not themselves causes of action. Count XIX is seeks "Injunctive and Declaratory Relief," against all Defendants. Count XX is a "Demand for Judgment, Damages, and Punitive Damages," against all Defendants. Count XXI is a "Demand for Jury Trial." (Am. Compl. ¶¶ 204-14.)

| | |
|---|---|
| **Count I:** | **"Violations of 42 U.S.C. § 1983" by all Defendants acting in concert to maintain an unconstitutional custom, policy, and practice** |
| **Count II:** | **"Race and Gender Discrimination," against the individual defendants** |
| **Count III - IX:** | **"Failure to Train/Supervise" employees, against Defendants Commonwealth, BCPO, DPW, OIG, Nardone, Allen, and Wagner** |
| **Count X:** | **"Back Pay Settlement," against Defendants Commonwealth, Nardone, Allen, and Byerly** |
| **Count XI:** | **"Taking of Property—Medical Benefits," against Defendants Commonwealth, Nardone, and Allen** |
| **Count XII:** | **"Denial of Due Process," against Defendants Commonwealth, Nardone, and Allen** |
| **Count XIII:** | **"Malicious Prosecution and Abuse of Process," against Defendants Commonwealth, Nardone, Wagner, and Sweeney** |
| **Count XIV:** | **"Invasion of Privacy—False Light," against Defendants Commonwealth, BCPO, DPW, OIG, Nardone, Allen, Sweeney, Wagner, and Mann Faulkner** |
| **Count XV:** | **"Defamation—Slander and Libel," against against Defendants Commonwealth, BCPO, DPW, OIG, Nardone, Allen, Sweeney, Wagner, and Mann Faulkner** |
| **Count XVI:** | **Unjust Enrichment, against Defendants Commonwealth, BCPO, DPW, Nardone, Allen, and Byerly** |
| **Count XVII:** | **Intentional Infliction of Emotional Distress, against all Defendants** |
| **Count XVIII:** | **"Conspiracy under the Color of State Law," against all Defendants[6]** |

## III.  STANDARD OF REVIEW

---

[6] Defendants Sweeney, Turner, Graziani, Schrocki, Deboise, Nardone, and Wagner are unrepresented in this matter. It is unclear whether these defendants were ever properly served.  As such, the claims asserted against them are not discussed in this opinion.

**A.** **Motion to Dismiss Pursuant to Federal Rule 12(b)(1)**

Motions to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), may be raised at any time. See 2 James Wm. Moore et al, Moore's Federal Practice § 12.30 [1] (3d ed. 2005). Rule 12(b)(1) challenges are either facial or factual attacks. Id. at § 12.30 [4]. "A facial attack questions the sufficiency of the pleading," and "[i]n reviewing a facial attack, a trial court accepts the allegations in the complaint as true." Id. However, "when a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Id.; see also Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In a Rule 12(b)(l) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen, 549 F.2d at 891; see also Carpet Group Int'l v. Oriental Rug Imps. Ass'n, 227 F.3d 62, 69 (3d Cir. 2000). "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen, 549 F.2d at 891. "The [trial] [c]ourt must be careful, however, not to allow its consideration of jurisdiction to spill over into a determination of the merits of the case, and thus must tread lightly in its consideration of the facts concerning jurisdiction." Dugan v. Coastal Indus., Inc., 96 F. Supp. 2d 481, 483 (E.D. Pa. 2000).

"[T]he plaintiff will have the burden of proof that jurisdiction does in fact exist." Mortensen, 549 F.2d at 891. The plaintiff must not only demonstrate that a controversy existed at the time it filed suit, but that it continues to exist throughout the litigation. Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 635 (Fed. Cir. 1991), abrogated on other grounds by, Liquid Dynamics Corp. v. Vaughan Co., 355 F.3d 1361, 1370 (Fed. Cir. 2004). A motion to dismiss for

lack of subject matter jurisdiction predicated on the legal insufficiency of a claim "is proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-09 (3d Cir.), cert. denied, 501 U.S. 1222 (1991) (quoting Bell v. Hood, 327 U.S. 678, 682 (1946)).

**B.     Motion to Dismiss Pursuant to Federal Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original). In Twombly, the

8

Court made clear that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citations omitted).

In 2009, the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Court made clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [will] not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663. "[O]nly a complaint that states a plausible claim for relief [will] survive[] a motion to dismiss." Id. at 679.

In light of the decision in Iqbal, the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion. First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211 (citation omitted). If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged, but has failed to show, that the pleader is entitled to relief. Id.

## IV.  DISCUSSION

Throughout the Amended Complaint, Plaintiff generally states that she "seeks relief under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981,1983, 1985, 1986, and 1988, the First Fifth and Fourteenth Amendments to the United States Constitution, other constitutional

provisions, federal statutes and state laws." (See generally Am. Compl.)  As will be discussed, it

is difficult to determine the exact theories of liability being pursued under each Count.


## A.  Title VI of the Civil Rights Act of 1964

Plaintiff repeatedly cites Title VI of the Civil Rights Act of 1964 as one of the authorities

for her various claims.  It is unclear from the Amended Complaint against which Defendants

Plaintiff attempts to assert a Title VI claim.  However, in her "Memorandum of Law in Response

to [the DPW] Defendants' Motion to Dismiss," Plaintiff states that her Title VI claim was

intended to be asserted against the Commonwealth. (Mem. Resp. to Defs.' Mot. to Dismiss 19-

20.) Title VI provides:

> No person in the United States shall, on the ground of race, color, or national origin, be
> excluded from participation in, be denied the benefits of, or be subjected to
> discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.  One definition of a "program or activity" is "a department, agency,

special purpose district, or other instrumentality *of a State* or of a local government." 42 U.S.C. §

2000d-4a(1)(A) (emphasis added).[7]  This statutory language suggests that Title VI applies to any

department or agency *of a State* that receives federal funds, but not the State itself.  The Ninth

Circuit, in reviewing the legislative history of Title VI, has held that "while Title VI may apply

to any subsection of the State which receives federal funds, Title VI will not apply to the State as

a whole simply because one subsection receives such funds." Ass'n of Mexican-Am. Educators

v. California, 183 F.3d 1055, 1068 opinion amended and superseded sub nom. Ass'n of

---

7 The other definitions listed in 42 U.S.C. § 2000a-4a(1) are clearly inapplicable, and therefore are not
discussed.

Mexican-Am. Educators v. State of Cal., 195 F.3d 465 (9th Cir. 1999) rev'd in part on reh'g sub

nom. Ass'n of Mexican-Am. Educators v. State of California, 231 F.3d 572 (9th Cir. 2000)

(citing S. Rep. 100-64 (1987), reprinted in 1988 U.S.C.C.A.N. 3, 6)).

This Court finds the Ninth Circuit's analysis persuasive. Thus, while the Commonwealth

of Pennsylvania receives federal funds for programs such as LIHEAP, the Commonwealth itself

cannot be sued under Title VI. Accordingly, Plaintiff's Title VI claim against the

Commonwealth is dismissed.

## B. 42 U.S.C. § 1981

Plaintiff repeatedly cites 42 U.S.C. §1981 as one of the authorities for her claims.

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every
> State and Territory to make and enforce contracts, to sue, be parties, give evidence, and
> to the full and equal benefit of all laws and proceedings for the security of persons and
> property as is enjoyed by white citizens, and shall be subject to like punishment, pains,
> penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). It is unclear from the Amended Complaint exactly what rights

Plaintiff attempts to assert under § 1981, or as to which Defendants. Nonetheless, freestanding §

1981 claims cannot be pursued against state actors. See McGovern v. City of Philadelphia, 554

F.3d 114, 116 (3d Cir. 2009) ("the exclusive federal remedy against state actors for violation of

rights guaranteed in § 1981 is 42 U.S.C. § 1983" (quoting Jett v. Dallas Independent School

District, 491 U.S. 701, 723 (1989)); see also Ford v. Southeastern Pennsylvania Transp.

Authority, No. 09-2975, 2010 WL 1141380, at *1 (3rd Cir. Mar. 26, 2010) ("[t]he exclusive

remedy for relief from a state agency for civil rights violations" is § 1983).

Thus, whatever rights Plaintiff attempts to assert under § 1981 can only be remedied under § 1983, if at all. Accordingly, Plaintiff's §1981 claims against Defendants Allen, Deloach, Pek-Lilly, Alyakoub, Seelal, Faulkner, Graziani, Byerly, DPW, OIG, and BCPO must be dismissed pursuant to Rule 12(b)(6).

## C. 42 U.S.C. § 1983

Plaintiff asserts claims under 42 U.S.C. § 1983 against the Defendants. Plaintiff appears to assert the following § 1983 claims: (1) Defendants "acted in concerted conduct to maintain an unconstitutional custom, policy, and practice" (Count I); (2) "racial and gender discrimination" (Count II); (3) failure to train and/or supervise (Counts III-IX); (4) denial of due process claims based upon deprivation of property in the form of back pay and medical benefits (Counts X-XII); (5) malicious prosecution and abuse of process (Count XIII); and (6) "conspiracy to violate civil rights (Count XVIII). (Am. Compl. ¶ 26-38, 43-44; Mem. Resp. to Defs.' Mot. to Dismiss 25.) Defendants argue the Commonwealth, the OIG, and the BCPO are all immune from suit for damages under the Eleventh Amendment of the Constitution. Further, the individual Defendants contend that, in their official capacities, they possess the same immunity. Section 1983 provides, in relevant part:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added). The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

### 1.      Commonwealth of Pennsylvania

The Eleventh Amendment has been interpreted to render states generally immune from suit by private parties in federal court. See e.g. Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir.2002).  Accordingly, it is well-established that states are not "persons" within the meaning of § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.").

There are two limited circumstances under which a state's Eleventh Amendment immunity can be overcome. Id. ("The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.")  Neither exception applies here.  The Commonwealth of Pennsylvania has explicitly withheld its consent to suit in federal court. 42 Pa.C.S. § 8521(b). Furthermore, "[s]ince Congress expressed no intention of disturbing the states' sovereign immunity in enacting § 1983, these suits, when brought against a state, are barred by the Eleventh Amendment." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 697 (3d Cir. 1996) (citing Will, 491 U.S. at 58); see also Petsinger v. Pa. Department of Transportation, 211 F.Supp.2d 610, 613 (E.D. Pa. 2002) ("Congress did not abrogate state immunity in general in enacting civil rights legislation, including § 1983.") (internal citation omitted).

Thus, any and all § 1983 claims Plaintiff intended to assert against the Commonwealth are dismissed.

**2.      States Agencies: OIG and BCPO**

Eleventh Amendment immunity extends to the state's agencies or departments, provided that the state is the real party interest. MCI Telecomm. Corp. v. Bell Atlantic-Pa. Serv., 271 F.3d 491, 503 (3d Cir.2001); see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-01, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).  As previously stated neither of the exceptions to the Commonwealth's Eleventh Amendment immunity is applicable here.  As such, any and all § 1983 claims Plaintiff intended to assert against OIG and BCPO are dismissed.

**3.      State Officials: Allen, Deloach, Pek-Lilly, Alyakoub, Seelal, Graziani, Mann Faulkner, and Byerly**

The Eleventh Amendment prohibits actions in federal court for monetary relief against state officials acting within the scope of their official capacity. See Edelman v. Jordan, 415 U.S. 651 (1974).  Plaintiff concedes the Eleventh Amendment bar on damages against the individual defendants in their official capacity. (Mem. Resp. to Defs.' Mot. to Dismiss 18-19.) Nevertheless, Plaintiff advances three arguments as to why her § 1983 claims remain viable against the individual defendants.

First, Plaintiff claims "the Defendants in their official capacity have waived [their] Eleventh Amendment immunity because their employer and co-Defendant, [the] Commonwealth of Pennsylvania, accepted the federal LIHEAP funds." Id. at 19.  To support this proposition, Plaintiff cites a single case, Brown v. Montana, 442 F. Supp. 2d 982, 988 (D. Mont. 2006). However, Brown in no way supports Plaintiff's contention that the mere receipt of federal funds

by Pennsylvania abrogates the official capacity immunity of the individual defendants. This argument is therefore completely meritless.

Second, Plaintiff states she is seeking injunctive and declaratory relief against Defendants. It is true that the Eleventh Amendment does not bar suits against state officials for injunctive or declaratory relief, as exhibited by Count XIX. See Ex Parte Young, 209 U.S. 123, 159-60 (1908). Nonetheless, "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct ... [n]or is declaratory judgment meant simply to proclaim that one party is liable to another." Hodinka v. Del. Cnty., 759 F.Supp.2d 603, 610 (E.D. Pa. 2011) (quoting Corliss v. O'Brien, 200 Fed. Appx. 80, 84 (3d Cir.2006)); see also Gruntal & Co., Inc. v. Steinberg, 837 F.Supp. 85, 89 (D.N.J.1993).

Here, the only non-monetary relief requested by the Plaintiff is "that this Court declare the actions of all Defendants complained herein to be in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, the First Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws." (Am. Compl. ¶¶ 206, 209).[8] Because this request is only relevant to those actions that Defendants have already committed in the past, Plaintiff's request for declaratory judgment against the individual Defendants in their official capacity is denied.

Finally, Plaintiff claims this suit is brought against each of the defendants in their individual capacities, not their official capacities. The Eleventh Amendment bars suit against a state official in his or her official capacity because it "is not a suit against the official but rather

---

8 Plaintiff also "demands permanent injunctive relief," but does not explain to the Court the details of the desired injunction. (Am. Compl. ¶¶ 205, 208.)

is a suit against the official's office" and "[a]s such it is it is no different from a suit against the State itself." Will, 491 U.S. at 71.  However, the Supreme Court ruled in Hafer v. Melo, 502 U.S. 21 (1991) that the Eleventh Amendment does *not* bar suits brought against state officials in their individual or personal capacities, even if the actions which are the subject of the suit were part of their official duties.  Id. at 31 ("We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."); see also Scheuer v. Rhodes, 416 U.S. 232 (1974) ("[S]ince Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law.").  The Supreme Court in Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) explained the distinction as follows:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.

Accordingly, in personal capacity suits, a plaintiff seeks to impose personal liability upon an individual officer and recover from the personal assets of that officer.  The Eleventh Amendment is not implicated because the State is not the real party in interest.  Thus, the question before the Court is whether this is a personal capacity suit or an official capacity suit. The Court finds that the individual defendants are being sued in their official capacities, and this suit it therefore barred by the Eleventh Amendment.

There are eighteen defendants in this matter: fourteen individual defendants, three state agencies, and the Commonwealth of Pennsylvania. After deciphering the confused nature of Plaintiff's various theories of liability, it would seem that Plaintiff's basic theory of this case is that fourteen individuals, working across three distinct state agencies, somehow and for some unknown reason conspired to falsely implicate her in the LIHEAP scandal and thereby deprive her of her constitutional rights. According to Plaintiff, OIG investigators Sweeney, Turner, and Graziani participated in this conspiracy by providing false testimony to the grand jury and thereby having false charges brought against her. Defendants Allen, Deloach, Schrocki, Pek-Lilly, Alyakoub, Seelal, Duboise, and Nardone—who are mostly employed in various human resources positions at DPW—then abetted the conspiracy by "failing" to undertake additional investigation into Plaintiff's suspension, depriving her of employment benefits, and acting in concert with the OIG defendants to "cover up" their false accusations. Defendant Byerley, employed by the BCPO then "maliciously" made deductions from Plaintiff's "back pay settlement" for some wholly unspecified reason. Defendants Mann Faulkner (Pennsylvania's Inspector General) and Wagner (Pennsylvania's Auditor General) had no direct involvement in Plaintiff's case and are clearly being sued in nothing other than their official capacities.

Plaintiff's contentions defy logic, and ignore the factual circumstances that ultimately led to Plaintiff's indictment. The Grand Jury Presentment paints a decidedly different picture. (DPW Defs.'Mot. to Dismiss, Ex. 1: Grand Jury Presentment.)[9] The investigation into fraud in

---

[9] "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations of the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of America, 361 F.3d 217, 222 n. 3 (3d Cir. 2004). Although Plaintiff did not attach

LIHEAP began when one DPW employee used his supervisor's signature stamp, without her approval, to approve cash payments to his friends. Id. at 25. From there, the case was referred to the Office of Inspector General to determine whether this incident was indicative of a larger pattern of criminal activity within the LIHEAP office. Id. In February 2006, Defendant Sweeney, a Special Investigator in the Inspector General's Office, and Defendant Turner, a Welfare Fraud Investigator, began the probe of LIHEAP. Their investigation focused on the previous three heating seasons: 2003-04, 2004-05, and 2005-2006. OIG's investigator uncovered "an entire network of workers…routinely, systematically, and illegally siphoning funds from the program." Id. at 26. Investigator Sweeney testified before the grand jury that he interviewed every supervisor in the Philadelphia LIHEAP office and two-thirds (about 50) of the employees. Id. Sweeney questioned them in order to get an understanding of how the program worked and how thefts could be occurring. Id. The Presentment goes on to state:

> As Sweeney and Turner searched the LIHEAP database looking for transactions that raised these red flags, they noticed that the same workers and the same addresses kept repeating. The repeat addresses were noteworthy because a household, whether it was an apartment or a house, was supposed to receive only one LIHEAP cash grant in the name of one applicant per heating season. Yet the investigators noticed that some recipients, despite varied spellings of the same name and distortion of the SSN, were getting multiple direct cash grants of $700 or more. Plus, the grants were going to different individuals at the same address.

> The names of the same DPW employees repeatedly appeared on these suspect

applications with repeating addresses. Plaintiff was one of these employees. Id. at 27. Based on this information, Sweeney and Turner developed a list of factors for detecting fraudulent

---

the Grant Jury Presentment to her Complaint, the Court considers the Presentment to be both a public document and a document that forms the basis of Plaintiff's claims. Thus, the Court may consider the Presentment in evaluating the instant motions to dismiss. See W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 n. 6 (3d Cir.2010) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997) (stating that a court may consider matters extraneous to the pleadings that are "integral to or explicitly relied upon in the complaint").

transactions: the number of LIHEAP applications submitted from each address; the name of the applicant; the amount of the cash grant; the total dollar amount of all of the cash grants to the address; the name of the who who supposedly verified the application; the name of the CW who processed the application; the name of the employee who entered the final approval into the computer; the dates of the processing and the final approval; the alleged household income for the address; a list of the invalid social security numbers submitted on the applications; information about the ownership or tenants associated with the address; information on how and where the LIHEAP checks were cashed; and any other relevant information the investigators learned. Id. at 29-30.

Much of the evidence relating to particular transactions by individual employees like Plaintiff was presented to the Grand Jury in the form of spreadsheets that were prepared by Sweeney and Turner. Plaintiff's spreadsheet revealed that, based on these factors, Plaintiff was involved in 17 suspicious transactions totaling $13,379. Id. at 58. Based on this evidence, Plaintiff was indicted along with 17 other DPW employees.

It appears to the Court that OIG's investigation was impartial and comprehensive. Unfortunately for Plaintiff, the fact that she was ultimately acquitted of the charges against her does not undermine the fact that the grand jury's indictment of her, based on the objective evidence presented to it, was reasonable. Plaintiff has not identified a single custom, policy, or practice that led to a § 1983 violation. Accordingly, Count I must be dismissed. Likewise, Plaintiff's assertion that the individual defendants violated her constitutional rights because she is African American and female is completely baseless. Nothing in the pleadings, or the Grand Jury Presentment, suggests that Plaintiff was targeted by the grand jury investigation because she is African American and/or a female. Count II is therefore also dismissed.

Plaintiff then asserts a claim for failure to train or supervise against Defendant Allen (Count VIII). It appears that, in making this claim, Plaintiff is asserting that Defendant Allen, DPW's Human Resources Director, should be liable for Defendants Deloach Schrocki, Pek-Lilly, Alyakoub, Seelal, and Dubose's alleged § 1983 violations because she supervised those individuals. (Am. Compl. ¶¶ 150-55.) However, "[l]iability under § 1983 cannot be imposed vicariously or under traditional grounds of respondeat superior." Shaw by Strain v. Stackhouse, 920 F.2d 1135, 1147 (3d Cir. 1990) (internal citation omitted). Rather, "'defendant[s] in a civil rights action must have personal involvement' to be liable" under § 1983. Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Accordingly, Plaintiff's § 1983 "failure to train/supervise" claim against Defendant Allen (Count VIII) is dismissed.

Plaintiff next argues, in Counts X, XI, and XII that Defendant Allen deprived her of back pay and medical benefits without due process in violation of § 1983. "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir.2000).

Plaintiff's Amended Complaint fails to satisfy both of these requirements. The Court will assume, but not decide, that Plaintiff had a property interest in her job and the benefits afforded to her by that job. However, Plaintiff is unable to meet the second requirement because she failed to take advantage of the procedures afforded to her. Plaintiff concedes that, on June 11, 2009, she was notified that she was being deprived of pay, medical benefits, and union

benefits when she received when she received the letter from Defendant Allen. (Am. Compl. ¶ 49, 55.) The letter notified Plaintiff of the procedure available to her. (DPW Defs.' Mot. to Dismiss, Ex. 2: June 11, 2009 Letter to Plaintiff.) As the letter states, Plaintiff could have appealed the deprivation to the State Civil Service Commission or filed a grievance through the collective bargaining agreement. Plaintiff makes no allegation that Defendant Allen, or anyone else, prevented her from doing so. Having either failed or declined to avail herself of the procedures available to her, Plaintiff cannot now challenge the sufficiency of those procedures.

Plaintiff's contention that Defendant Allen did not properly investigate the allegations against her is without merit. Plaintiff has no protected liberty interest in having Defendant Allen conduct an independent investigation into the circumstances surrounding Plaintiff's suspension. As has been discussed, Plaintiff was only indicted (and ultimately suspended) following a lengthy investigation by the Office of the Inspector General. Defendant Allen was not obligated to conduct an investigation of OIG's investigation. Accordingly, Counts X, XI, and XII are dismissed.

**D.      42 U.S.C. §§ 1985 and 1986**

Plaintiff next cites 42 U.S.C. § 1985 as one of the authorities for her claims. Plaintiff presumably relies on subsection (3), which provides in pertinent part:

> If two or more persons in any State or Territory …do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Section 1985, like § 1983, does not itself create any substantive

rights. Rather, "it serves only as a vehicle for vindicating federal rights and privileges which have been defined elsewhere." Brown v. Philip Morris Inc., 250 F.3d 789, 805 (3d Cir. 2001) (citing Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 376 (1979)). In order to make out a violation of §1985(3), Plaintiff must show four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of citizenship. United Brotherhood of Carpenters v. Scott, 463 U.S. 825, 828-29 (1983) (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

It is clear that Plaintiff has failed to satisfy these elements. As Defendants point out, under the first and third prongs, Plaintiff's conspiracy claims fails because it lacks the requisite specificity. Under § 1985, "[a] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Leon v. Murphy, 988 F.2d 303, 311 (2d Cir. 1993). Plaintiff's Amended Complaint contains no facts suggesting the individual defendants acted to form a conspiracy or what they did to plan or further a conspiracy. Indeed, nothing in the Amended Complaint suggests a meeting of the minds to deprive Plaintiff of her constitutional rights. See Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183, 205 (3d Cir. 2008). Plaintiff merely alleges that certain defendants "acted in unlawful concert" with other defendants. (See e.g., Am. Compl. ¶¶ 33, 54, 60, 69.) This will not suffice.

With respect to the second prong, as the Court has already discussed, Plaintiff has failed

to show the individual defendants were motivated by discriminatory animus.  As to the fourth

prong, the Court has already dismissed Plaintiff's other constitutional claims.  As such, Plaintiff

has not proven that she was deprived or any federal right or privilege.  Plaintiff has failed to

make out a prima facie case under § 1985, and her claims under this section are therefore

dismissed.  Because Plaintiff's § 1985 claims fail, her claims under 42 U.S.C. § 1986 must also

fail.[10]  Plaintiff's § 1986 claims are, therefore, likewise dismissed.

**E.      Tort Claims**

Finally, Plaintiff asserts various state law tort claims in Counts XIII through XVII.

Defendants argue that Plaintiff's tort claims are partially time barred by the applicable statutes of

limitations. Plaintiff argues that her tort claims are viable under the continuous injury and

discovery of injury doctrines.  The Court need not reach these questions.  Given the Court's

aforementioned dismissal of Plaintiff's constitutional claims, the Court now lacks subject-matter

jurisdiction over Plaintiff's supplemental state law tort claims.  Accordingly, the Court dismisses

---

10 42 U.S.C. § 1986 provides: "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case...." 42 U.S.C. § 1986. As the language of this section suggests, in order to maintain a cause of action under § 1986, Plaintiff must show the existence of a § 1985 conspiracy. Thus, "transgressions of § 1986 by definition depend on a preexisting violation of § 1985...." Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994) (citing Rogin v. Bensalem Township, 616 F.2d 680, 696 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

Plaintiff's tort claims pursuant to Rule 12(b)(1).

## V. CONCLUSION

For the foregoing reasons, Defendants' six motions to dismiss will be granted with respect to all counts. An appropriate order follows.